NORWEST FINANCIAL, Appellant, v.
NELLIE LAWVER, Respondent.

No. 22943

March 24, 1993                    849 P.2d 324

*Michael Lehners,* Reno, for Appellant.

*White Law Chartered,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Respondent Nellie Lawver and her husband, William Lawver, incurred a debt to appellant Norwest Financial. Three months later, William filed for bankruptcy. Norwest filed a claim as a secured creditor in William's bankruptcy; however, the claim was not fully satisfied. Thereafter, Norwest proceeded with this action against Nellie for the unpaid balance of the loan. The trial court granted Nellie's motion for summary judgment, finding that Norwest was seeking to recover against the couple's community property in violation of the 11 U.S.C. § 524(a)(3) injunction. For reasons expressed hereafter, we agree.

The facts of this controversy are not in dispute. After William and Nellie were married, they both executed a promissory note dated September 6, 1990, in favor of Norwest. The note was governed by Nevada law and provided that "[a]ll persons signing this Note will be fully responsible for paying it in full." The note was secured by the borrowers' household goods. On December 11, 1990, William filed for bankruptcy under Chapter 7. In accordance with 11 U.S.C. 541(a)(2), William turned over all of his separate property and all of the couple's non-exempt community property to the Chapter 7 trustee for liquidation.

Norwest filed a secured creditor's claim in William's bankruptcy for approximately $6,000. Since the claim was only partially satisfied, Norwest sought relief against Nellie for the unpaid balance of the note. Nellie interposed William's discharge in bankruptcy as an affirmative defense and thereafter moved for summary judgment. Her summary proceeding was based upon

the premise that her obligation on the note could not be satisfied against community property acquired after the filing date of William's bankruptcy petition. The district court agreed and awarded Nellie attorney's fees. The lower court's ruling was supported by the finding that Norwest was seeking to impose a charge against the Lawver's community property in violation of the injunction provided in 11 U.S.C. § 524(a)(3).[1]

Summary judgment is only appropriate when, after a review of the record in a light most favorable to the non-moving party, there are no remaining issues of material fact and the moving party is entitled to judgment as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). On appeal, this court is "required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its granting of summary judgment." Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981).

The sole issue on appeal is whether the district court erred in denying Norwest access to Nellie's share of community property acquired after the date of William's bankruptcy petition.

The weight of authority suggests that 11 U.S.C. § 524(a)(3) creates an injunction against the commencement of an action against the debtor's spouse to collect community property acquired after the commencement of the debtor's bankruptcy action. *See* In re Braziel, 127 B.R. 156 (Bankr.W.D.Tex. 1991). The court in In re Smith, 140 B.R. 904 (Bankr.D.N.M. 1992), indicated the following:

> Ordinarily, a petition by one spouse passes all community property into the estate of the filing spouse. § 541(a)(2). A discharge of the debts then includes community claims and prohibits creditors from proceeding against community

---

[1] 11 U.S.C. § 524(a)(3) provides as follows:

(a) A discharge in a case under this title—

. . . .

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

property acquired after the petition was filed even as against the nondebtor spouse. § 524(a)(3). (Citation omitted.) *Therefore, in community property states, there is no need for both spouses to file unless the nondebtor spouse has substantial separate debt.*

*Id.* at 907 (Our emphasis). *Accord* In re Green, 12 B.R. 594 (Bankr.D.N.M. 1981) (if community property was in the estate, and community claims were discharged, it is effective against community creditors of the nondebtor spouse as well as of the debtor). It has also been indicated that:

if one spouse in a community property state has commenced a bankruptcy case where, as here, no claim is excepted from the debtor's discharge and is not otherwise found to be nondischargeable, and if the nondebtor spouse would not have had a claim excepted from her discharge in a hypothetical case commenced on the same day as the commencement of the debtor's case, then the creditors of either spouse holding community claims on the date of bankruptcy are thereafter barred from asserting claims against after acquired community property.

In re Karber 25 B.R. 9, 12 (Bankr.N.D.Tex. 1982).

With the above cases in mind we conclude, in accordance with 11 U.S.C. § 524(a)(3), that a creditor may not proceed against community property acquired post-petition by the non-bankrupt spouse in order to satisfy a community debt. Accordingly, the outcome of this dispute is determined by the nature of the debt, whether community or separate.

## CLASSIFICATION OF THE CLAIM

A determination as to whether a creditor holds a community claim is resolved by an examination of state law. In re Sweitzer, 111 B.R. 792, 793 (Bankr.W.D.Wis. 1990). Nevada defines community property as all property, other than that stated in NRS 123.130, acquired after marriage by either husband or wife, or both, limited by exceptions which are not relevant to the instant matter. NRS 123.220. Although all property acquired after marriage is presumed to be community property, this presumption may be rebutted by clear and convincing evidence. Forrest v. Forrest, 99 Nev. 602, 604-5, 668 P.2d 275, 277 (1983).

The property that Norwest seeks to reach is Nellie's wages.

The wages of either spouse during marriage are considered to be community funds regardless of which spouse earns the greater income or which spouse supports the community. Robinson v. Robinson, 100 Nev. 668, 670, 691 P.2d 451, 453 (1984).

The standard for determining whether a debt is community or separate entails factually discerning the intent of the lender when granting the loan. Schulman v. Schulman, 92 Nev. 707, 716-17, 558 P.2d 525, 531 (1976); Hogevoll v. Hogevoll, 138 P.2d 693, 697 (Cal.Ct.App. 1943). This standard is further discussed in In re Marriage of Stoner, 195 Cal.Rptr. 351 (Cal.Ct.App. 1983):

> "The character of [the] property acquired upon credit during marriage is determined according to the intent of the lender to rely upon the separate property of the purchaser or upon a community asset." (*In re Marriage of Aufmuth* [152 Cal.Rptr. 668, 674 (1979)].)
>
> A presumption exists that the proceeds of a loan acquired during marriage are community property. Said presumption is rebuttable upon a showing that the loan was extended on the faith of existing property belonging to the acquiring spouse. (Citation omitted.)

*Id.* at 863-64, 195 Cal.Rptr. at 354-55.

A review of the record reveals, as noted above, that both Nellie and William were signatories to the relevant loan documents. In addition, the loan application indicates that the salaries of both spouses were considered in the granting of the loan. Finally, the security agreement describes what is indisputably community property as the collateral which secured the loan.[2]

There is no indication that Norwest relied on any property other than community property in securing or granting the loan to the Lawvers. Moreover, Norwest filed a claim in William's bankruptcy which encompassed all of the Lawvers' nonexempt community assets. We therefore conclude that the transaction clearly created a community debt.

Norwest now seeks to execute against community property belonging to the Lawvers in the form of Nellie's wages. The

---

[2]The collateral was described as follows:

All of the household goods and sports/recreation equipment of every kind now located at the Borrowers' residence address shown above, except those items prohibited by the Federal Trade Commission's Credit Practices Rule (explained in the above paragraph titled "Credit Practices Rule"). If you have more than one radio or television, you are excluding the least valuable radio and least valuable television and giving us a security interest in the remaining radio(s) and television(s).

language of 11 U.S.C. 524(a)(3) prohibits a creditor from seeking satisfaction of a community debt by resorting to the debtor's property through an action against the non-bankrupt spouse commenced after the filing of the petition in bankruptcy.

Accordingly, we hold that the district court properly granted summary judgment based upon a finding that Norwest was seeking to impose a charge against the Lawvers' community property in violation of the injunction provided in 11 U.S.C. § 524(a)(3).

For the reasons stated above, we affirm the order of the district court granting summary judgment.[3]

---

[3]The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.